WILLIAM WOODROW LYNCH, and MICHAEL F. LYNCH, Guardian, Appellants, v. BANKERS LIFE COMPANY et al., Appellees.

No. 44706.

DECEMBER 12, 1939.

George C. Claassen, for appellants.

E. N. Farber, R. A. Rockhill, John E. Behnke, H. H. Lommen, Willoughby, Strack & Sieverding, Thomas & Thomas, E. H. Lundy, and J. C. Pryor, for appellees.

RICHARDS, J.—William Lynch Sr., a resident of Grundy county, departed this life on January 13, 1923. An instrument was filed that purported to have been executed by him as his last will and testament. Objections were made to its admission to probate. A hearing thereon resulted in an order in probate being entered in the Grundy district court on August 23, 1923.

Therein it was held that the instrument was not the will of decedent and was of no force, validity, or effect whatever, and in the order its admission to probate was refused. Soon afterwards in a suit in equity in the same court decedent's real estate was partitioned by sale thereof in several separate tracts, and distribution of the proceeds was made to decedent's heirs. In the decree of partition was a finding that decedent died intestate. The instant case was commenced on January 14, 1936. One plaintiff is the guardian of certain minors, and the other came from under his disability of minority within one year prior to the commencement of the action. The latter plaintiff and the wards of the plaintiff-guardian claim they have interests in decedent's real estate because they are among those designated as residuary legatees or remaindermen in the instrument that was not admitted to probate. That there was fraud in procuring the order that refused admission of the instrument to probate was alleged by plaintiffs in their petition, and on that ground they prayed that the order in probate as well as the decree of partition be annulled and set aside. The trial court after hearing the cause entered a decree finding for the defendants and dismissing the petition. An appeal therefrom has been taken by plaintiffs.

A motion that the appeal be dismissed has been submitted with the case. It was filed in April, 1939. The movants include Catherine Brady and Ella Frakes, who are children of decedent, the Federal Land Bank of Omaha, and some others of the defendant-appellees. As to another group of defendant-appellees not joining in the aforesaid motion the appeal had been dismissed and the decree below affirmed as to them in October, 1938. The motion before us is founded on a factual situation which it may be well to set out, before going to the question the motion presents. Some of the following matters appear in the abstract of the record, others in proceedings that have been had since the appeal reached this court. The decedent died seized of approximately 800 acres of land. According to the terms of the instrument that was refused admission to probate, all of decedent's property, real and personal, excepting a certain tract of 80 acres, was devised and bequeathed to his seven children for the terms of their natural lives, share and share alike, and after the death of said children said property was

given and devised to the heirs of decedent's said children, share and share alike, in fee simple title. Six of testator's children survived him. Five of them purchased all of decedent's real estate from the referee in partition, each buying a separate tract. But when the instant suit was commenced the title to the land purchased from the referee by three of the children had been alienated to other persons; the land purchased by another of them, Ella Frakes, had been mortgaged to appellee Bankers Life Company, and had also been conveyed by her as we understand the record; the land purchased by Catherine Brady, one of said five children, though not alienated by deed, had been mortgaged by her to appellee Federal Land Bank of Omaha. In the instant suit all persons and entities that had acquired title to or liens upon the various portions of the real estate of which decedent died seized were made parties-defendant in the district court, and they were made appellees in this court by service upon them of the notice of appeal. In October, 1938, after the appeal had been perfected and was pending in this court, appellants, for money considerations accepted by them with the approval of the probate court in which plaintiff-guardian had been appointed, executed disclaimers of and quit-claim deeds that conveyed all the several tracts of real estate that decedent owned at the time of his death, excepting the 160 acres purchased from the referee by Catherine Brady. The grantees in the quitclaim deeds were those defendant-appellees as to whom this appeal has been dismissed in the manner about to be related. Appellants by motion filed in this court, in which the disclaimers and quitclaim deeds were set forth, procured an order of this court on October 15, 1938, to the effect that on the final submission of the case in this court appellants will claim no interest in the disclaimed and quitclaimed lands against the defendant-appellee owners thereof. On October 24, 1938, another order was entered in this court dismissing the appeal as to the defendant-appellee owners of the disclaimed and quitclaimed tracts, and ordering that as to them the decree of the district court be and is affirmed.. The latter order was made on motion of the defendant-appellee owners of said tracts. Attached to this motion was appellants' consent that the motion be granted. There was, however, no dismissal or affirmance of

the district court decree as to any of the defendant-appellees who, in April, 1939, filed the motion to dismiss the appeal.

From the foregoing these things are factually apparent. (1) At the time this court originally acquired jurisdiction to decide this appeal, a reversal followed by a probating of the alleged will, without more, would have cast on movants, Catherine Brady, Ella Frakes, and others of defendant-appellees, a life estate in all decedent's real property excepting the 80 acres. (2) At the present time a reversal followed by admission to probate of the alleged will will cast no such life estate in any of decedent's lands unless it be in the 160 acres purchased and still owned by Catherine Brady. (3) This changing of the eventualities inherent in a reversal of this case has been brought about and accomplished through agreements of appellants and the dismissed defendant-appellees, and their conceded purpose to profit thereby has been accomplished. Appellants seem to think that nevertheless we should consider their appeal, reverse the probate order and decree of partition, and accord appellants all the advantages that would now flow from a reversal and a successful offering of the alleged will for probate, though such reversal will be of an order and decree now of different import than the order and decree appealed from.

A somewhat analogous situation arose in the case of McPherson v. Storch, 49 Kan. 313, 30 P. 480. The plaintiff McPherson had sold a tract of land to defendant Mills, the latter executing a mortgage to secure a part of the purchase price. Mills then sold to each of the defendants Storch and Parker an undivided one third of the land, each grantee assuming and agreeing to pay one third of the mortgage debt. In an action by plaintiff against Mills, Storch and Parker upon the mortgage and debt it secured, a judgment was rendered against Mills for the full amount and against each of the defendants Storch and Parker for one third of the debt, but the decree provided that if either of the latter defendants paid his one third within a given time the payment would operate as a release of the mortgage to the extent of the one third interest such paying defendant owned in the land. The plaintiff excepted to the decree and brought a proceeding in error to the supreme court, making all defendants parties. He contended that the lower court should have ordered a foreclosure and sale of all the mortgaged property

and a personal judgment against each of the defendants Storch and Parker for one third of the deficiency. Later plaintiff appeared in court and waived any right to review or reverse the judgment as against Parker and dismissed the petition in error as to him. It was held that plaintiff's so doing amounted to an absolute dismissal of the petition in error and operated as a dismissal as to all the defendants. In arriving at this conclusion the court had this to say:

"The judgment sought to be reviewed and reversed is joint, and its provisions and conditions are so interdependent that it cannot be reversed or disturbed without affecting all of the defendants in the court below. Each of the defendants is so connected in the decree, and all would be so affected by its reversal, that all are necessary to a review. The proportionate liabilities of the others will necessarily be affected by the absence of the dismissed defendant, and in justice to the others all defendants should remain in the case if there is to be a reversal. The plaintiff undertook to make a qualified dismissal,—that is, to dismiss Parker so that a judgment rendered against him should not be disturbed, and yet retain him for the purpose of having all necessary parties in the court so as to secure a review and reversal of the judgment against the other defendants. This cannot be done. Parker is either in the case or out of it. He cannot be a party and a stranger in the same case."

Iowa authorities directly in point have not been cited. But it is not new to the established practice in this court to refuse to entertain an appeal on account of an appellant's conduct subsequent to entry of the judgment or decree from which he appeals. For instance, an appellant who has taken benefits inseparably related to the judgment or decree from which he has appealed, has afforded a good and sufficient reason for a refusal to entertain his appeal. Root v. Heil, 78 Iowa 436, 43 N. W. 278; Ballinger v. Conn. Mut. Life Ins. Co., 118 Iowa 23, 91 N. W. 767. In the instant case it is clear that the dismissal made in October, 1938, affected injuriously the rights of Catherine Brady, though perhaps not as certainly the rights of all the remaining appellees. For the dismissal had the effect of an adjudication against the movants including Catherine Brady upon the question whether they had rights as life tenants

in all of decedent's land in event of the alleged will being probated. Though such was the effect, the dismissal seems to have lacked one element commonly ascribed to an adjudication. That is, had the dismissal been an adjudication against movants as we ordinarily conceive of an adjudication, it would have been regarded as a finality because movants had had their day in court to be heard respecting their rights. In the situation here they had that not. The dismissal barred Catherine Brady from asserting any rights as life tenant in any land other than her own 160 acres. The same is true as to other life tenants though as to them the dismissal in October, 1938, may not be prejudicial in the same manner. We perceive no method in which a reversal could now effect justice. It is conceded that appellants were paid by the dismissed appellees for what appellants did in the behalf of the latter. It is apparent that one thing appellants did was to arbitrarily quiet in the dismissed appellees the title to their respective tracts against any claims Catherine Brady or other movants may have had. We are unable to follow through with the appellants and the dismissed-appellees. Another course is more consistent with fundamental conceptions of right and justice, is in accord with our practice with respect to entertaining appeals, and we think has support in McPherson v. Storch, supra. That is, we hold that the appeal should be and is dismissed upon the motion that was submitted with the case.—Appeal dismissed.

OLIVER, C. J., and MILLER, HALE, MITCHELL, SAGER, HAMILTON, and BLISS, JJ., concur.